**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

**NORTHERN DIVISION**

| | |
|---|---|
| IN RE:<br>TYSON FOODS INC., CHICKEN RAISED<br>WITHOUT ANTIBIOTICS CONSUMER<br>LITIGATION | Case No. 1:08-md-01982-RDB<br><br>**PLAINTIFFS' MEMORANDUM OF<br>POINTS AND AUTHORITIES IN<br>SUPPORT OF MOTION FOR<br>PRELIMINARY APPROVAL OF<br>SETTLEMENT** |

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................................... 2

    A.      Summary Of Plaintiffs' Allegations ...................................................... 2

    B.      Procedural History .................................................................................. 2

    C.      Discovery And Settlement Negotiations................................................. 3

III.    MATERIAL TERMS OF THE PROPOSED SETTLEMENT ......................... 4

    A.      Settlement Class....................................................................................... 4

    B.      Benefits For Class Members And Consumers ...................................... 4

    C.      Attorneys' Fees ....................................................................................... 6

    D.      Release Of Claims................................................................................... 7

    E.      Class Notice And Settlement Administration ....................................... 7

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL. .............. 8

    A.      Settlement Approval Process ................................................................. 8

    B.      The Settlement Passes Muster Under A Preliminary Fairness Review. ................. 9

        1.      There Is Probable Cause To Believe The Settlement Is Fair. ..................... 9

        2.      The Settlement Falls Within The Range Of Possible Final Approval. ............................................................................... 11

            a.      The aggregate settlement consideration appears adequate. .......... 11

            b.      The distribution plan appears reasonable.................................... 13

V.      THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED............. 14

    A.      The Settlement Class Meets The Requirements Of Rule 23(a). .......................... 14

        1.      The Class Is So Numerous That Individual Joinder Is Impractical. .............................................................................. 14

        2.      There Are Common Issues Of Law And Fact. ....................... 15

        3.      The Named Plaintiffs' Claims Are Typical. ........................... 16

        4.      The Named Plaintiffs And Their Counsel Have Adequately Represented The Class And Will Continue To Do So.......................................................... 16

    B.     The Settlement Class Also Meets The Requirements Of Rule 23(b)(3).............. 17

    C.     The Proposed Notice Program Satisfies The Requirements Of Due Process. .................................................................................................................... 19

VI.    CONCLUSION............................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**                                                           **Page**

*Buchanan v. Consolidated Stores Corp.*
217 F.R.D. 178 (D. Md. 2003) ........................................................................... 15

*Bulmash v. Travelers Indem. Co.*
257 F.R.D. 84 (D. Md. 2009) ............................................................................. 16

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*
6 F.3d 177 (4th Cir. 1993) ............................................................................ 7, 16

*Hewlett v. Premier Salons Int'l, Inc.*
185 F.R.D. 211 (D. Md. 1997) ........................................................................... 15

*Horton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*
855 F. Supp. 825 (D.S.C. 1994) ........................................................................... 8

*In re Jiffy Lube Sec. Litig.*
927 F.2d 155 (4th Cir. 1991) ............................................................................... 9

*In re MicroStrategy, Inc. Securities Litigation*
148 F.Supp.2d 654 (E.D. Va. 2001) .................................................................... 8

*In re Mid-Atl. Toyota Antitrust Litig.*
564 F. Supp. 1379 (D. Md. 1983) ..................................................................... 10

*In re Mills Corp. Sec. Litig.*
2009 U.S. Dist. LEXIS 120066 (E.D. Va. Dec. 23, 2009) ................................. 9

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*
214 F.R.D. 614 (W.D. Wash. 2003) ................................................................. 11

*In re Serzone Prods. Liab. Litig.*
231 F.R.D. 221 (S.D. W. Va. 2005) .................................................................. 19

*In re Vivendi Universal, S.A. Sec. Litig.*
242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................ 19

*In re Warfarin Sodium Antitrust Litig.*
391 F.3d 516 (3d Cir. 2004) .............................................................................. 19

*Mitchell-Tracey v. United Gen. Title Ins. Co.*
237 F.R.D. 551 (D. Md. 2006) ......................................................................... 14

*Peoples v. Wendover Funding Inc.*
179 F.R.D. 492 (D. Md. 1998) ......................................................................... 15

*Robinson v. Fountainhead Title Group Corp.*
257 F.R.D. 92 (D. Md. 2009) ........................................................................... 11

*S.C. Nat'l Bank v. Stone*
  139 F.R.D. 335 (D.S.C. 1991) ........................................................................... 14

*Sanderson Farms, Inc. v. Tyson Foods, Inc.*
  547 F. Supp. 2d 491 (D. Md. 2008)……………………………………………...………3, 11

**Rules**

Fed. R. Civ. P. 23(a)(1)......................................................................................................... 14

Fed. R. Civ. P. 23(a)(4)......................................................................................................... 16

Fed. R. Civ. P. 23(b)(3)................................................................................................... 17, 18

Fed. R. Civ. P. 23(c)(2)................................................................................................... 19, 21

Fed. R. Civ. P. 23(e)(1)......................................................................................................... 19

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002) ................ 7

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5 (4th ed.2002)……………14

David F. Herr*, Manual for Complex Litigation, Fourth* § 21.632 (2008) ............................ passim

## I.      __INTRODUCTION__

In this multidistrict litigation, Plaintiffs allege that beginning in June 2007, Defendant Tyson Foods promoted and sold chicken to consumers as having been raised without antibiotics, when in fact antibiotics were used.  Plaintiffs brought this litigation against Tyson on behalf of themselves and other consumers throughout the country who bought the chicken products, asserting various state-law claims.  The parties have reached a proposed class action settlement, embodied in the Settlement Agreement attached to the accompanying Declaration of James P. Ulwick as Exhibit 1 ("Settlement Agreement").  Plaintiffs now move for preliminary approval of this settlement, so that the class may be informed of the terms of the settlement and the Court may set a hearing to determine whether final approval should be granted.

As discussed more fully below, the settlement is fair, as it was reached through extensive, arm's-length negotiations conducted by competent, experienced counsel, equipped with enough information to adequately assess strengths and weaknesses of the case and the advantages of settlement.  Furthermore, a preliminary evaluation of the settlement terms shows that the settlement is substantively adequate.  Tyson has agreed to a settlement valued at $5 million.  Depending on the proof of purchase submitted by a class member, he or she may be entitled to receive up to $50 in cash, up to $10 in cash, or a $5 coupon on any Tyson-branded product.  Tyson will also separately pay any award of attorneys' fees and expenses approved by the Court, without reducing the benefits provided to the class.  In exchange, the litigation and all included cases will be dismissed and class members' claims released.

A preliminary fairness review shows that the proposed settlement falls within the range of possible final approval.  Accordingly, Plaintiffs ask the Court to grant preliminary approval of the

settlement; provisionally certify the contemplated nationwide class for settlement purposes; set a final fairness hearing; and direct that notice of the settlement and hearing be given to the class.  A proposed order is attached to the Settlement Agreement as Exhibit B.

## II.    STATEMENT OF FACTS

### A.    Summary Of Plaintiffs' Allegations

Plaintiffs allege that beginning in June 2007, in response to the public's growing demand for healthier, natural foods, Tyson embarked on a campaign to promote, label, and sell its fresh chicken products (and some frozen and prepared products) as "Raised Without Antibiotics" or "Raised Without Antibiotics that impact antibiotic resistance in humans."  (In this memorandum, "RWA" refers to such labeling or claims by Tyson.)  In reality, however, Tyson was injecting its eggs with antibiotics, and then feeding its chickens feed containing antibiotics..  In a related case brought by Tyson competitors, this Court enjoined Tyson from making certain RWA claims.  In June 2008, the U.S. Department of Agriculture similarly ordered Tyson to stop using the "Raised Without Antibiotics" claim or any variation thereof on its chicken labels.  Plaintiffs assert state-law claims on behalf of themselves and others who bought Tyson RWA chicken.

### B.    Procedural History

The above-captioned litigation consists of eight cases centralized before this Court for pretrial purposes by order of the Judicial Panel on Multidistrict Litigation:  *Cohen v. Tyson Foods, Inc.*; *Court v. Tyson Foods, Inc.*; *Cutsail v. Tyson Foods, Inc.*; *Johnson v. Tyson Foods, Inc.*; *Kranish v. Tyson Foods, Inc.*; *Wilson v. Tyson Foods, Inc.*; *Wright v. Tyson Foods, Inc.*; and *Zukowsky v. Tyson Foods, Inc.*  *Cutsail* and *Kranish* were originally filed in this District; *Cohen*, *Wilson*, and *Zukowsky*, in the Eastern District of Arkansas; *Court*, in the Western District of Washington; *Johnson*, in the

2

District of Idaho; and *Wright*, in the District of New Jersey.  The Panel's reasons for centralizing the litigation here included this Court's previous experience presiding over *Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 547 F. Supp. 2d 491 (D. Md. 2008), a Lanham Act case brought by competitors of Tyson over its RWA marketing practices.

On January 30, 2009, Plaintiffs filed a Master Amended Complaint for administrative purposes, to streamline discovery and class certification in the consolidated proceedings before this Court.  Tyson answered the Master Amended Complaint on March 4, 2009, and the parties proceeded with discovery.  The Court held monthly status conferences and oversaw several discovery disputes. The deadline for Plaintiffs to file their class certification motion was set for December 7, 2009.  On December 4, 2009, the parties notified the Court that they had reached a settlement in principle and agreed to stay all pending deadlines.

## C.    Discovery And Settlement Negotiations

The proposed settlement was negotiated by counsel thoroughly familiar with the factual and legal issues surrounding Plaintiffs' claims.  The Master Amended Complaint was filed January 30, 2009, and discovery soon began in earnest.  Over the next twelve months, Plaintiffs obtained nearly 450,000 pages of internal Tyson documents and several thousand pages of documents from other sources.  The parties exchanged nearly 100 written discovery requests and took fifteen depositions. Plaintiffs obtained the discovery from the *Sanderson Farms* litigation and reviewed the exhibits and transcript from the preliminary-injunction hearing in that case.  Plaintiffs also obtained relevant documents from the U.S. Department of Agriculture through Freedom of Information Act requests, and subpoenaed materials from third parties such as Tyson's marketing agencies and retailer customers.

Exploratory settlement talks took place between the parties soon after the litigation commenced but were not successful and did not resume until December 2008.  From December 2008 to August 2009, the parties again engaged in settlement discussions, albeit sporadically.  As class discovery was closing, however, the parties renewed their discussions.  From August 2009 to December 2009, the parties engaged in a series of settlement negotiations.  The negotiations were conducted through in-person meetings and frequent discussions by telephone and e-mail throughout the process.  The negotiations were handled by attorneys with substantial experience in litigating, trying, and settling consumer class actions.

## III.   MATERIAL TERMS OF THE PROPOSED SETTLEMENT

### A.   Settlement Class

For purposes of the settlement, a Settlement Class is to be certified under Rule 23(b)(3), *i.e.*, on an opt-out basis, consisting of "all persons who purchased Tyson chicken or chicken products sold in the United States as either "Raised Without Antibiotics" and/or "Raised Without Antibiotics That Impact Antibiotic Resistance in Humans" between June 19, 2007 and April 30, 2009.[1]

### B.   Benefits For Class Members And Consumers

Under the settlement, Tyson must pay $5 million in class member claims (and, under certain conditions, food bank donations); costs of class notice and settlement administration; and any incentive awards that the Court approves for the four named Plaintiffs and four class members who were deposed in this litigation(not to exceed a total of $20,000).

---

[1] Even though Tyson stopped using the RWA label in the summer of 2008, the extended class period ensures that people who may have bought frozen products still bearing the RWA label into the fall of 2008 or spring of 2009 can recover as members of the class.

Class members are entitled to make claims based on their purchase of any "Covered Tyson Product." Covered Tyson Products are defined as (i) fresh or frozen chicken, Cornish hens, or deli, bought between June 19, 2007 and April 30, 2009; and (ii) prepared chicken/value-added convenience chicken products (*e.g.*, "chicken tenders"), bought between November 1, 2007 and April 30, 2009. (Settlement Agreement ¶ 13.B.) Class members may elect among three types of claims. Class members have the option of filling out and mailing in a hard-copy claim form, or going to the settlement website and submitting a claim electronically.

*Tier 1 claims*. Class members who submit a valid claim with proof of purchase of one or more Covered Tyson Products, in the form of a cash register receipt or similar contemporaneously generated documentation, are entitled to a refund of the actual purchase price, up to an aggregate amount of $50 per household. (Settlement Agreement ¶ 13.C.)

*Tier 2 claims*. In the alternative, class members may submit a claim without supporting documentation and stating, under penalty of perjury, (i) the estimated dollar amount of Covered Tyson Products they bought, (ii) the frequency of the purchases, (iii) the type of product bought, and (iv) the stores where the purchases were typically made. Class members who submit valid Tier 2 claims are entitled to a refund of the actual purchase price, up to an aggregate amount of $10 per household. Class members are allowed to submit a Tier 2 claim for some purchases and a Tier 1 claim for others. (Settlement Agreement ¶ 13.D-E.)

*Tier 3 claims*. The third option for class members is to submit a claim for a coupon instead of cash. Class members must submit a claim that includes their name and contact information and state, under penalty of perjury, that they bought Tyson RWA chicken at least once. Class members who submit valid Tier 3 claims are entitled to a single coupon per household for up to $5 off any Tyson

product.  Class members who make Tier 3 claims are not allowed to make Tier 1 or Tier 2 claims.

(Settlement Agreement ¶ 13.F.)

If the sum of all valid class claims, notice and administration costs, and incentive awards is less than $5 million, Tyson must make in-kind donations of Tyson products to food banks in such amounts to bring its total payout to $5 million (excluding attorneys' fees and expenses).  If the sum exceeds $5 million, the compensation payable to claimants will be reduced to bring the sum down to that figure.  (Settlement Agreement ¶ 5.)[2]

In addition, subject to the Court's approval, Tyson will pay incentive awards, in an aggregate amount not to exceed $20,000, to the four Plaintiffs named in the Master Amended Complaint, who all provided deposition testimony in this litigation, and the four class members who also were deposed.

(Settlement Agreement ¶ 5(iv).)

### C.     Attorneys' Fees

Class counsel will apply to the Court for an award of attorneys' fees and expenses, in a total amount not to exceed $3 million, to be paid by Tyson separately and without reducing any compensation due the class under the settlement.  (Settlement Agreement ¶ 6.)

---

[2] The mechanism for reducing claims is set forth in paragraph 13.H of the Settlement Agreement.  In summary, 50 percent of the amount available for distribution will be allocated to pay Tier 1 claims; 25 percent to pay Tier 2 claims; and the remaining 25 percent to pay Tier 3 claims.  If any tier's allocation is insufficient to pay all valid claims in that tier, the amounts payable on those claims will be reduced pro rata.  If any tier's allocation exceeds the sum of all valid claims in that tier, the excess will be added to the allocation of the next tier below (*i.e.*, any remainder from the Tier 1 allocation will be added to the Tier 2 allocation, and any remainder from the Tier 2 allocation will be added to the Tier 3 allocation).  If any amount still remains after the "first pass" through the process, that amount will be used to recalculate any claims that were originally reduced, in this order of priority: first, Tier 1 claims; then, Tier 2 claims.  (Settlement Agreement ¶ 13.H.)

**D.**     **Release Of Claims**

The settlement, and the judgment to be entered upon final settlement approval, will release claims that any Plaintiff or class member (including spouses, assigns, heirs, executors, etc.) may have against Tyson; any distributors, food service providers, or retailers who sold or supplied its RWA chicken; or any parent company, affiliate, subsidiary, successor, employee, director, etc. of any of these entities.  (Settlement Agreement ¶ 8.B.)  The released claims include all claims or causes of action arising from or relating to the claims that were or could have been asserted in the litigation; the facts or events alleged in the litigation; or any label, advertising, marketing, or other statements made to Plaintiffs or the class regarding Tyson's RWA representations.  (Settlement Agreement ¶ 8.C.)

**E.**     **Class Notice And Settlement Administration**

The firm Garden City Group will serve as the Settlement Administrator.  The Settlement Administrator will publish notice in accordance with the proposed notice plan discussed below, subject to the Court's approval.  The Settlement Administrator will also maintain and establish a dedicated settlement website, at www.ChickenSettlement.com, at which the Master Class Action Complaint, the published notice, and a more detailed long-form notice can be viewed.  Hard-copy claim forms will also be downloadable at the website, and claims can be submitted electronically through the website.  (Settlement Agreement ¶ 11-13.A.)  The Settlement Administrator will process and review all class member claims for validity, and determine the amount due on each claim. (Settlement Agreement ¶ 13.G.)  The claims process will be overseen by Plaintiffs' counsel.

IV.     **THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL.**

   A.     **Settlement Approval Process**

   "Courts should foster settlement [of class actions] in order to advantage the parties and promote 'great saving in judicial time and services.'" *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993); *see also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:41, at 87 & n.1 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") (collecting cases).

   The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements, comprising a preliminary-approval determination, provision of notice to the class, and a final fairness hearing.  "First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  David F. Herr*, Manual for Complex Litigation, Fourth* § 21.632, at 472 (2008).  A test traditionally applied in this preliminary fairness review is whether the proposed settlement falls within the range of possible final approval "or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement."  *Horton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (D.S.C. 1994).  Furthermore "[i]f the case is presented for both class certification and settlement approval, . . . the judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  *Manual for Complex Litigation, Fourth* § 21.632, at 472-73.

   "Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members."  *Id.* § 21.633.  "At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.'  The

8

parties may present witnesses, experts, and affidavits or declarations.  Objectors and class members may also appear and testify."  *Id.* § 21.634 (internal quotation marks and footnote omitted).

"Ultimately, approval of a class action settlement is committed to the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances."  *In re MicroStrategy, Inc. Securities Litigation*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001).

**B.      The Settlement Passes Muster Under A Preliminary Fairness Review.**

**1.      There Is Probable Cause To Believe The Settlement Is Fair.**

At this preliminary-approval stage, the Court is not called upon to conduct a full-blown analysis of the fairness, adequacy, and reasonableness of the settlement, which is a matter reserved for the final fairness hearing.  Nevertheless, reference to the criteria governing final approval facilitates the discussion of whether there is probable cause to submit the terms of the settlement to the class.

Under *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991), a settlement warrants approval if it is both "fair" and "adequate."  Fairness concerns process:  A settlement is fair if it "was reached as a result of good-faith bargaining at arm's length, without collusion."  *Id.* at 159.  Adequacy concerns substance:  A settlement is adequate if it provides adequate consideration to the class under the circumstances, including the strengths and weaknesses of the case, and the delay, expense, and risk of continued litigation.  *See id.*; *see also In re Mills Corp. Sec. Litig.*, No. 1:06-cv-00077, 2009 U.S. Dist. LEXIS 120066, at *23 (E.D. Va. Dec. 23, 2009) ("The Fourth Circuit in *Jiffy Lube* provided district courts with a two-level analysis applicable in evaluating a settlement's 'fairness' and 'adequacy.'").

In conducting the first inquiry – whether a settlement is fair – a court should consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been

conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of . . . class action litigation [involved]." *Jiffy Lube*, 927 F.2d at 159.

The proposed settlement here easily passes muster under these factors. In January 2009, Plaintiffs filed their master complaint. Tyson answered instead of moving to dismiss. Thus, well before a settlement in principle was reached in December 2009, the pleadings had been settled and the major issues defined for trial. In addition, a substantial amount of discovery had been conducted, and class discovery completed. The parties were also informed by the discovery and proceedings in *Sanderson Farms*, particularly the Court's ruling on plaintiffs' request for a preliminary injunction in that case.

Furthermore, the settlement is the product of extensive negotiations that were conducted at arm's length at all times. After initial, exploratory talks started and broke off early on, settlement discussions resumed in December 2008. Over the next few months, the parties discussed settlement only intermittently while preparing for trial. Around August 2009, as class discovery was closing, the talks picked up in pace and intensity. The parties negotiated in person, over the phone, and through e-mail. A settlement in principle was reached only after approximately four months of give-and-take, during which the parties had to iron out differences over virtually every material issue. At several points, it appeared that no settlement would be reached. In addition, the attorneys who negotiated the deal for plaintiffs have substantial experience in the prosecution and settlement of consumer class actions.

Therefore, the Court should find that there is probable cause for believing the settlement is fair, warranting preliminary approval. *See In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1385 (D. Md. 1983) ("Probable cause exists that the Settlement was reached as a result of good faith

10

bargaining at arms length. . . . While the Court in no way prejudges the issue of 'fairness,' and stands ready to entertain any evidence which may subsequently be submitted on the issue, the Court has no problem in finding at the present that probable cause exists that the Settlement was arrived at in an appropriate manner.").

> **2.     The Settlement Falls Within The Range Of Possible Final Approval.**
>
> **a.     The aggregate settlement consideration appears adequate.**

The second inquiry mandated in *Jiffy Lube* for evaluating a settlement is whether it is "adequate."  In assessing the adequacy of a settlement for final approval, a court should consider the benefits to the class provided by the settlement, in light of such factors as the strengths and weaknesses of the case; the risk, duration, and expense of continued litigation; defendants' solvency; and the degree of opposition to the settlement.  927 F.2d at 159.  For preliminary-approval purposes, the question is whether the adequacy of the settlement appears to be such that it falls within the range of possible final approval.  *See Mid-Atl. Toyota*, 564 F. Supp. at 1385 (granting preliminary settlement approval after finding that "the 'adequacy' of the Settlement is well within the range of 'possible approval'").

Plaintiffs believe they have a strong case on the merits.  *See Sanderson Farms*, 547 F. Supp. 2d at 504 (holding that Tyson's RWA claims were false or substantially likely to mislead consumers). Nevertheless, as with virtually any case, proceeding to trial and judgment would entail substantial risks, including the possibility that class certification would be denied or summary judgment granted. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 619 (W.D. Wash. 2003) (denying class certification as unmanageable where "the process of simply identifying who rightfully belongs within the proposed class would entail a host of mini-trials"); *but see Robinson v.*

11

*Fountainhead Title Group Corp.*, 257 F.R.D. 92, (D. Md. 2009) (certifying RICO claims for class treatment and rejecting defendants' argument that certification was precluded by individual causation and damages issues).  At trial, Tyson could argue for a measure of damages significantly lower than that sought by Plaintiffs, and that class members be required to come forward and prove up their damages individually.  Thus, even if Plaintiffs prevailed at trial, Tyson's potential arguments on damages could well result in a judgment lower than the millions of dollars of settlement consideration now available through settlement.

To recap, the settlement requires Tyson to pay $5 million in class claims (and in-kind food bank donations, if claims do not consume all available funds), notice and administrative costs, and up to $20,000 in Court-approved incentive awards.  Plaintiffs' counsel estimate that notice and administrative costs for this settlement should be around $600,000.  Therefore, approximately $4.4 million or more will be made available for distribution to class members – without the class having to incur the considerable delay and risk of seeking relief through continued litigation and trial, as well as any subsequent appeals.

In addition, the Settlement Agreement has a mechanism to ensure that Tyson pays a meaningful amount to resolve the case.  As set forth above, if the total dollar amount of valid claims, costs, and incentive awards is less than $5 million, Tyson must contribute products to food banks in such amounts as to make up the difference.  The dollar amount of these products will be determined by reference to Tyson's EMI Index or the AC Nielsen Index, which are industry indices used to measure the values of food products.  (Settlement Agreement ¶ 5.)  The food donation provisions thus ensure that the settlement has a meaningful deterrent effect on Tyson, in contrast to purely claims-made settlements that do not require minimum payouts.

###### b.        The distribution plan appears reasonable.

The proposed plan for distributing the settlement proceeds is also reasonable.  Class members who submit a claim form along with a receipt or similar proof of purchase can receive a cash refund of the full price or prices they paid for RWA chicken, up to $50 per household.  Class members who submit a claim form estimating their purchases, without supporting documentation, can receive a cash refund of the full price or prices they paid, up to $10 per household.  Class members who submit a simple claim form stating merely that they bought RWA chicken at least once can receive a coupon for $5 off any Tyson product.  These provisions justifiably tailor a class member's recovery to the strength of the evidence supporting his or her individual claim.  The highest level of compensation (Tier 1) is reserved for people who have the strongest proof of their purchases, in the form of independent documentation – the type of evidence that Tyson would likely demand at trial.   The middle level (Tier 2) goes to people who provide estimated details about their purchases.  The lowest level of compensation (Tier 3) is for those able or willing to provide only a simple statement that they bought an unspecified amount of RWA chicken for an unspecified price at an unspecified time.

The experience of Plaintiffs' counsel in pursuing and favorably resolving class actions includes a substantial degree of familiarity with designing settlement allocation plans similar to the one here. They made a carefully considered decision to agree to a plan delivering the greatest benefits to the class members who could best substantiate their claims through supporting documentation.  These consumers are the ones most likely to be both willing and able to come forward and prove up their damages for a litigated class judgment.  Other class members, who may have been excluded from a class judgment altogether because of insufficient proof, are still eligible for relief under the settlement. Thus, there is a reasonable, rational basis for the allocation plan.  *See Mills Corp.*, 2009 U.S. Dist.

LEXIS 120066, at *39 ("In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect.  The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis.") (citation omitted).

Thus, the adequacy of the settlement is such that it falls within the range of possible final approval, and there is probable cause to submit its terms to class members for their reaction.

## V. THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED.

### A. The Settlement Class Meets The Requirements Of Rule 23(a).

### 1. The Class Is So Numerous That Individual Joinder Is Impractical.

In connection with preliminary settlement approval, Plaintiffs also ask the Court to certify the proposed Settlement Class on a provisional basis, to enable the dissemination of notice and set the stage for final-approval proceedings.  As stated in the *Manual for Complex Litigation, Fourth*, at the preliminary-approval stage, if the class has not already been certified, "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id.* § 21.632, at 473 *see also S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 338 (D.S.C. 1991) ("The propriety of certifying plaintiff classes for the purposes of implementing settlements is well-recognized.").

The first requirement for class certification under Rule 23(a) is that the class be so numerous that joinder of its members is impractical.  Fed. R. Civ. P. 23(a)(1).  Courts do not require evidence of the exact size of the class nor the identity of class members to satisfy the numerosity requirement. *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D. Md. 2006) ("To require such accuracy . . . would foreclose most class litigation.").  Based on sales data, many thousands of

consumers bought Tyson's RWA chicken during the proposed class period of June 19, 2007 to

April 30, 2009, and are thus members of the Settlement Class.  A class of this size easily meets the

numerosity requirement of Rule 23(a)(1).  *See Newberg on Class Actions* (4th ed.) § 3:5, at 247 ("In

light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise

a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should

meet the test of Rule 23(a)(1) on that fact alone.").

### 2.      There Are Common Issues Of Law And Fact.

The next requirement, set forth in Rule 23(a)(2), requires the existence of questions of law or

fact common to the class.  This test examines the group characteristics of the class as a whole and

whether the class shares common questions.  It does not require that ***all*** legal and factual questions be

common to all class members.  To meet the commonality requirement, only one issue need be shared

by the class.  *See Mitchell-Tracey*, 237 F.R.D. at 557 ("Rule 23(a)(2) merely requires that there be a

single common question of law or fact to satisfy the commonality requirement."); *Peoples v.

Wendover Funding Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998) ("factual differences among the class

members' cases will not preclude certification if the class members share the same legal theory").

"The commonality requirement is relatively easy to satisfy, and very few cases have been dismissed

for failing to meet it."  *Buchanan v. Consolidated Stores Corp.*, 217 F.R.D. 178, 187 (D. Md. 2003)

(citing *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 216 (D. Md. 1997)).

Here, there are crucial factual and legal questions common to the class, including whether

Tyson's RWA claims were false or misleading; whether the misleading nature of the claims was

material; and whether Tyson made the claims with knowledge of their falsity or misleading nature.

The Rule 23(a)(2) commonality requirement is thus satisfied.

### 3.     The Named Plaintiffs' Claims Are Typical.

The third requirement of typicality, imposed by Rule 23(a)(3), is satisfied if the class claims

are "fairly encompassed by the class representatives' claims." *Mitchell-Tracey*, 237 F.R.D. at 558.

"The test for determining typicality is whether the claim or defense arises from the same course of

conduct leading to the class claims, and whether the same legal theory underlies the claims or

defenses." *Peoples*, 179 F.R.D. at 498 (citing *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D.

628, 637 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993)).

The claims of the named Plaintiffs and those of all Settlement Class members arise from

precisely the same course of conduct by Tyson, namely, its promotion and sale of chicken pursuant to

uniform RWA representations that were allegedly false or materially misleading.  The claims of

Plaintiffs and the class are also based on the same legal theory.  Put simply, they all bought chicken

labeled and sold by Tyson as RWA, and they did not get what they paid for, as the chicken was

actually raised ***with*** antibiotics.  Accordingly, typicality is also present.

### 4.     The Named Plaintiffs And Their Counsel Have Adequately Represented The Class And Will Continue To Do So.

The fourth requirement is imposed by Rule 23(a)(4):  "[T]he representative parties will fairly

and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The determination of

adequacy of representation focuses on 'competency of class counsel, class counsel's willingness to

prosecute the action and on whether any conflict of interest exists between the named parties and the

class they represent.'"  *Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 89 (D. Md. 2009).

Plaintiffs' counsel have a great deal of experience and a high level of competence in

prosecuting and settling class actions and other complex litigation.   They have also demonstrated their

willingness to pursue this matter on behalf of the Settlement Class, having developed and prosecuted

the class members' claims before this Court during the one and half years since the litigation

commenced.  The named Plaintiffs have similarly shown their willingness and fitness to serve as class

representatives by working with their counsel to advance the litigation and complying with all

discovery obligations, including sitting for depositions.  In addition, there is no conflict of interest

between the named Plaintiffs and the Settlement Class.  As discussed above, Plaintiffs' claims are

typical of, and coextensive with, those of the class.  Plaintiffs have been subjected to the same course

of conduct as the other class members, have been injured in the same way, and seek relief on the same

basis.

     Thus, the named Plaintiffs and their counsel have already adequately protected the interests of

the Settlement Class and will continue to do so.

**B.**     **The Settlement Class Also Meets The Requirements Of Rule 23(b)(3).**

     In addition to Rule 23(a), a class action must also meet at least one of the alternative conditions

of Rule 23(b).  In the present case, Plaintiffs seek certification of the Settlement Class on an opt-out

basis under Rule 23(b)(3).  Certification is appropriate under Rule 23(b)(3) if (i) "the questions of law

or fact common to class members predominate over any questions affecting only individual members";

and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy."   Fed. R. Civ. P. 23(b)(3).  The rule lists four factors relevant to the predominance and

superiority determinations:  "the class members' interest in pursuing individual actions; the extent and

nature of any existing litigation concerning the controversy; the desirability of concentrating the

litigation in a particular forum, and; the difficulties of managing a class action."  *Peoples*, 179 F.R.D.

at 501.  "Generally, certification under this Rule is appropriate when settling the parties' differences in

a single proceeding serves their interests by achieving 'economies of time, effort, and expense,' and by

promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." *Id.*

Common questions predominate in this case. As discussed above, all the core questions regarding Tyson's conduct are common to the class, including whether Tyson's RWA claims were false or misleading; whether the falsity or deceptiveness was material; and whether Tyson knew of the falsity or deceptiveness of its RWA representations. In addition, class treatment is the best available method of resolving the controversy. Settlement Class members have demonstrated little interest in pursuing individual actions. In fact, given the relatively small amounts of money at stake in each consumer's chicken purchases, individual litigation would be prohibitively costly. *See Peoples*, 179 F.R.D. at 501 ("On the issue of superiority, the Court finds this case is a prime candidate for class certification . . . . [I]t appears from the complaint that the actual damages of each class member are small. In this circumstance, the parties have little incentive – and quite possibly lack the means – to litigate their claims individually, and a class action best resolves the issue by permitting the class to air their common grievances in a single proceeding.").

Furthermore, to the knowledge of Plaintiffs and Tyson, the cases to be resolved by the proposed settlement are the only consumer actions concerning the RWA matter. *See id.* at 502 (in finding superiority, noting that "no evidence suggests that individual members have brought separate actions"). The desirability of concentrating the litigation in this District and before this Court has already been demonstrated by the transfer and centralization orders of the Judicial Panel on Multidistrict Litigation. Moreover, there are no unusual difficulties in managing the settlement on a class basis. As the Supreme Court stated in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable

management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Id.*

at 620.

Thus, the Court should find that this litigation meets the requirements of Rule 23(a) and

Rule 23(b)(3) for settlement purposes and provisionally certify the Settlement Class.

### C.   The Proposed Notice Program Satisfies The Requirements Of Due Process.

If a class is certified under Rule 23(b)(3), "the court must direct to class members the best

notice that is practicable under the circumstances, including individual notice to all members who can

be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, a court considering a

proposed settlement for final approval must "direct notice in a reasonable manner to all class members

who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

If class members cannot be identified through reasonable effort, notice by publication can

constitute the best practical notice.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536

(3d Cir. 2004) (affirming district court's approval of settlement, including use of publication notice)

("[W]e note that neither the plaintiffs nor DuPont had access to the names and addresses of the

multitude of people nationwide who purchased [the drug] Coumadin . . . .");  *In re Vivendi Universal,*

*S.A. Sec. Litig.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ("While individual notice, where reasonably

possible,  is required, when class members' names and addresses may not be ascertained by reasonable

effort, publication notice has been deemed adequate to satisfy due process.");  *In re Serzone Prods.*

*Liab. Litig.*, 231 F.R.D. 221, 231-32, 235-37 (S.D. W. Va. 2005) (approving settlement and rejecting

objections to notice plan, where vast majority of 8 million class members were given notice by

publication); *Manual for Complex Litigation, Fourth* § 21.311, at 432 ("Publication in magazines,

newspapers, or trade journals may be necessary if individual class members are not identifiable after reasonable effort . . . .").

As explained above, the Settlement Class members cannot be identified through reasonable effort.  Neither Plaintiffs nor Tyson has access to the names and address of the myriad people nationwide who bought RWA chicken during the class period.  Therefore, the parties propose to notify the class by print publication and Internet banner advertisements.  A short-form notice will be published in the weekly magazines *Parade*, which has a circulation of approximately 33 million, and *People*, which has a circulation of over 3.6 million.  Furthermore, Internet banner ads will be run for a month on the popular websites Weather.com, CNN.com, and Parenting.com, and on over 400 various local news, broadcast, and entertainment websites nationwide.  Clicking on a banner ad will take the viewer to the settlement website, where he or she can view the Master Class Action Complaint, the published notice, and a more detailed long-form notice.  Hard-copy claim forms will be available at the website for downloading, and claims can be submitted electronically through the website.  In addition, PR Newswire will distribute a press release announcing the settlement in English and Spanish to media across the country through its US1 Newsline and National Hispanic Newsline services.  (*See* Settlement Agreement, Ex. D (notice plan).)

Such a notice program satisfies Rule 23(c)(2) and the requirements of due process.  *See Warfarin Sodium*, 391 F.3d at 536) ("The District Court determined that this requirement [of notice under Rule 23(c)(2)] was satisfied by publishing summary notice in publications likely to be read by consumer claimants along with a call-center and a website with information and downloadable forms."); *see also Manual for Complex Litigation, Fourth* § 21.311, at 432 ("[R]eferring class members to an Internet site for further information can provide complete access to a wide range of

information about a class settlement.").

As for content, Rule 23(c)(2) says that the notice for a Rule 23(b)(3) class must clearly state the following in plain language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).  Relevant additional items to be set forth in a combined certification and settlement notice, such as the one here, include the following:

- class members' options and the deadlines for exercising those options;

- the material terms of the proposed settlement;

- any special benefits provided to the class representatives;

- information regarding attorneys' fees;

- the time and place of the final-approval hearing;

- the procedure for objecting to or opting out of the settlement;

- how settlement proceeds will be allocated and distributed;

- information by which class members can calculate or estimate their individual recoveries;

- contact information for class counsel and how to make inquiries.

21

*See Manual for Complex Litigation, Fourth* § 21.312, at 438-39.

The proposed summary notice for publication, attached to the Settlement Agreement as Exhibit F, supplies much of the above information, including a brief description of the case and settlement; class members' options, including the right to object or exclude themselves; and the date, time, place, and purpose of the final fairness hearing.  The summary notice also tells readers they can obtain a copy of the long-form notice by writing to a specified address or by visiting the settlement website.  The proposed long-form notice, attached to the Settlement Agreement as Exhibit E, goes into considerably more detail and contains all the items listed above, including a full description of the settlement benefits, the types of claims available to class members and what they can get for each type; and how to make a claim.

Thus, the proposed notice plan is sufficient with regard to both form and content, and should be approved by the Court.

## VI.   **CONCLUSION**

For the foregoing reasons, the Court should enter the accompanying proposed order granting preliminary approval of the proposed settlement; directing that notice be given to the Settlement Class in accordance with the proposed notice plan; and setting a final fairness hearing to determine whether the settlement warrants final approval.

Dated:  January 12, 2010                  Respectfully submitted,

/s/ James P. Ulwick
_____

James P. Ulwick
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Telephone:  (410) 752-6030
Facsimile:  (410) 539-1269

Scott E. Poynter
Chris D. Jennings
Gina M. Dougherty
EMERSON POYNTER LLP
The Museum Center
500 President Clinton Avenue, Suite 305
Little Rock, Arkansas 72201
Telephone:  (501) 907-2555
Facsimile:  (501) 907-2556

Daniel C. Girard
A. J. De Bartolomeo
Amanda Steiner
Christina H.C. Sharp
GIRARD GIBBS LLP
601 California Street, Suite 1400
San Francisco, California 94108
Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846

Richard S. Lewis
James J. Pizzirusso
HAUSFELD, LLP
1700 K St., NW, Suite 650
Washington, DC 20006
Telephone:  (202) 540-7200
Facsimile:  (202) 540-7201

Gary Friedman
Tracey Kitzman
Aaron D. Patton
FRIEDMAN LAW GROUP LLP
270 Lafayette Street, 14th Floor
New York, New York 10012
Telephone:  (212) 680-5150
Facsimile:  (646) 277-1151

*Attorneys for Plaintiffs and
the proposed Settlement Class*