UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| In Re:  Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation | : : : | 1:08-md-01982-RDB |
| ALL ACTIONS | : : | |

## OBJECTIONS TO PROPOSED SETTLEMENT OF CLASS ACTION

NOW COME Lisa F. Estep of 12309 Milligan Ave. Cleveland Ohio 44135, and Robert A. Falkner of 20826 Almar Rd. Shaker Heights Ohio 44122  (hereinafter referred to as "Objectors") by and through the undersigned counsel, and hereby file these Objections to the Proposed Settlement of this Class Action and, in support thereof, state as follows:

### PROOF OF MEMBERSHIP IN CLASS

Objectors Estep and Falkner both bought Tyson Chicken Products during the Class Period of November 1, 2007 and April 30, 2009, and are therefore members of the Class.  See Exhibit A for proof of membership.

### NOTICE OF INTENT TO APPEAR

Objectors hereby give notice that they intend to appear, through the undersigned counsel, at the Fairness Hearing presently scheduled for 10:00 A.M. on May 7, 2010, in the United States District Courthouse for the District of  Maryland (Northern Division) 101 W. Lombard Street, Baltimore MD 21201 before the Honorable Richard D. Bennett.

**SUMMARY OF SETTLEMENT**

The Settlement Agreement provides that Tyson will provide up to Five Million Dollars ($5,000,000 ) in cash and coupons to Class Members who file a claim, and will pay up to Three Million Dollars ($3,000,000) to Class Counsel.  However, an analysis of the Settlement Agreement  reveals that Tyson does not really expect to pay out anywhere near the $5 million figure and that this is more of a public relations move to get good publicity and to create an outlet for poultry products that are nearing their expiration dates.  The attorneys' fees are also inflated  and this Court is urged to reduce the requested fees and to withhold a significant portion of such fees until such time as it receives a final report detailing exactly how much cash was actually distributed to the Class.

**OBJECTIONS**

The Settlement Agreement is unfair, unreasonable and inadequate for the following reasons:

1.   PAYMENT OF MAXIMUM CLAIM AMOUNT IS UNLIKELY

The Notice provides that in order to receive the maximum benefit of $50 per household, one must provide "adequate proof of purchase," which is defined as a "cash register receipt or other documentation of the purchase." Notice ¶ 5(a).  The Class period is from June 19,2007 through April 30, 2009.  It is totally unrealistic to believe that in 2010, a consumer still have a cash register receipt from a grocery store from 2007 or 2008 or 2009.  Therefore it is unlikely that any $50 refunds will be made. And Tyson has reserved 50% of the Settlement Fund for these payments.  This makes absolutely no sense and must have only been inserted for its public

relations value. It is much more likely that $10 checks or $5 coupons will be issued. This means that between 500,000 and 1,000,000 claims would have to be made for Tyson to pay out the full $5,000,000 for which they are receiving credit.

      2.     <u>ATTORNEYS FEES ARE EXCESSIVE</u>. Class Counsel indicates in the Notice and in the Settlement Agreement that it will request up to $3 million in fees. That is entirely too much compensation considering how short this case's "time-line" was (filed in October 2008; Preliminary Approval Order signed January 15, 2010) and the relationship of the requested attorneys' fee to the amount of cash being paid to the Class. The fact that there is a "clear sailing" provision should be afforded little or no weight by the Court.

A simple review of the numbers involved in this case clearly indicates that the requested fee is excessive. Of the total settlement fund, $3.75 million is in the form of cash and $1.25 million is in the form of coupons. Even if 100% of the cash is claimed by the Class (a highly unlikely eventuality), Class Counsel is asking for a fee equal to **44%** of the combined fee and case fund. Even if one includes the coupons at full value, Class Counsel is requesting 37.5% of the combined settlement fund and fees. In either case, this is unconscionable. If less than 80% of the Class Members file a claim which, based upon historical evidence is highly likely, Class Counsel will receive more in fees than their clients; such a result would be neither fair not reasonable.

In addition, although a portion of the fees could be paid immediately upon the Effective Final Judgment Date (as such term is defined in the Settlement Agreement ¶ 18) a significant potion of Class Counsel's fees should be deferred until such time as the Court has received reports indicating the amount of monetary relief that has actually been delivered to the Class.

3.  DELAY IN PAYMENT OF ATTORNEYS' FEES

In the instant case, the Court cannot ascertain the true value of the benefit to the class until it knows exactly how much cash is paid out to Class Members.  Although  $5 million in cash and coupons are to be distributed, it is unlikely that anywhere near that amount will actually go to Class Members.  It is likely that a significant portion of the Settlement Fund will actually go to food banks in the form of a *cy pres* distribution. (See discussion, *supra)*.  It is very likely that much of the value of the settlement fund will go to food banks. The Settlement Agreement provides "[d]ue to the volume of product Tyson may be required to deliver in the form of in-kind contributions under paragraph 5..." the contributions can be made over a nine-month period. Settlement Agreement ¶ 19.   Therefore, at this point in time the Court does not know the exact amount that will be paid to the Class Members.  Without this information, the Court has no basis for determining what the relief is worth; without
knowing the value of the settlement to Class Members, the Court cannot make an independent finding about whether or not the requested fees are fair.

Based on anecdotal historical evidence, it is doubtful if more than 5% of those eligible will actually file a claim.  This Honorable Court should wait to award attorneys' fees until such time as it has had a chance to review the claims actually made to assure itself that the attorneys' fees are reasonably related to the actual benefit received by the Class.  This would be in keeping several cases in other jurisdictions and with the Federal Judicial Center's "Pocket Guide" for managing class action litigation.

"*Managing Class Action Litigation: A Pocket Guide for Judges, 2nd Ed,* Barabara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2009 at 28 argues that the best way to

determine appropriate attorneys' fees is to wait until after the redemption period has ended and the value of the benefits to the Class can be established by calculating class members' **actual use.** *Id*. Many courts are following the Federal Judicial Center guidelines to accurately value claims-made settlements when awarding attorney's fees. They do not simply use the maximum potential amount of claims, but wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members. *See e.g., In re Compact Disc Minimum Advertised Price Litig.*, 370 F. Supp. 2d 320 (D. Me. 2005) (awarding attorney's fees of 30% of value of redeemed coupons, which was 30% of claimed lodestar). *See also In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar):

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known… "Particularly where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate. Where there is no secondary market for coupon redemption, the judge can conclude that the stated value of the coupons … does not provide a sufficiently firm foundation to support a fee award…" *Id.* at *58 (quoting Manual for Complex Litigation § 14.121).

The Court proceeded to wait until the end of the redemption period to award fees. Counsel had estimated the value of the coupon voucher program at $205 to $265 Million and requested a fee of approximately 10% of this amount. The actual value of vouchers redeemed was only $4.8 million, or only 2.4% of the original estimate. Based upon the actual redemption, the fees requested by class counsel was **280% greater** than the actually value of the redeemed coupons. The court awarded counsel $2.4 Million in fees.

In *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorney's fees and stated that "Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained" *Id*. at *20-28. The court went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorneys' fees, a figure that was approximately one-third of class counsel's claimed lodestar.

There are many other examples of the courts rejecting coupon settlements and/or the attorneys' fees requested in those cases. For example, in <u>In re: General Motors Corp. Pickup Truck Fuel Tank Products Liability Litigation</u>, 55 F.3d 768 (3d Cir. 1995), <u>cert. denied</u>, 516 U.S. 824 (1996), the court rejected a settlement (seeking $4 million in attorneys fees) which offered $1,000 coupons for the purchase of a new truck. In <u>Maffei v. Alert Cable TV of North Carolina</u>, 342 S.E.2d 867, 872 (N.C. Sup. 1986), class certification was denied where the 29-cent relief was worth less than the cost of postage and stationery for submitting a claim.

In the instant case, both coupons and cash are to be distributed, and this is, in effect, a claims-made settlement. Therefore, the Court should await a report detailing exactly the amount of monetary benefit received by the Class.

    4.      <u>CY PRES DISTRIBUTION</u>

The way that the Settlement Agreement is structured, it is likely that the majority of the benefit will go to as yet unspecified food banks. What food banks will be chosen, and how will that be determined? The Settlement Agreement is silent on this issue. While the concept of making the *cy pres* donation is laudable, the actual mechanism described in the Settlement Agreement leaves many open questions. First of all, the value of these in-kind contributions will

be determined by either Tyson's EMI or the AC Nielsen Index, "as appropriate for the products being donated," and the value will be determined as of the date of the donation. <u>Settlement Agreement ¶5.</u> No explanation is included for what the term "Tyson's EMI" means. Is it the cost of production? The retail sales price? The wholesale cost? Or some other measurement?

Furthermore, the contributions are to be made over a period of nine months after the Effective Final Judgment Date. <u>Settlement Agreement ¶19.</u> This would allow Tyson to "donate" chickens or chicken parts that are at or near their expiration date. This could cost Tyson very little.

5.   <u>CLEAR SAILING</u>

Defendant agreed that it would not "oppose Settlement Class Counsel's application for an award of up to $3 million ($3,000,000)." <u>Settlement Agreement ¶ 6).</u> However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); *see also Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts.

"Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses). The Fifth Circuit has stated that "A district

court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980).  Therefore, the Court should disregard the "clear sailing" provision and do its own analysis of the Fee Request (once it is submitted.)

6. Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objectors also reserve the right to supplement these Objections with other and fuller objections after the Fee Request is filed.

7. The Class members have a legally protectable interest in this litigation.  That interest will be impacted by the proposed settlement agreement,  particularly the legal fees that are proposed to be paid.

8. These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors.  All of the legally required prerequisites material to these Objections have been met.

WHEREFORE, Objectors respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing;

C. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness,

inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

Respectfully submitted,

/s/Edward F. Siegel
Edward F. Siegel (Ohio Bar 0012912)
27600 Chagrin Blvd. #340
Cleveland Ohio 44122
Voice: (216) 831-3424
Fax:    (216) 831-6584
e-mail: efsiegel@efs-law.com
(pro hac vice)

EDWARD W. COCHRAN (Ohio Bar 0032942)
20030 Marchmont Road
Shaker Heights, Ohio    44122
Voice           (216)   751-5546
Facsimile       (216)   751-6630
E-mail:         edwardcochran@wowway.com

Counsel for Objectors Estep and Falkner

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Notice was served by ordinary U.S. Mail, postage pre-paid and/or electronic filing, on the parties whose names and full addresses are listed below on the 16th day of April 2010.

A.J. De Bartolomeo
GIRARD GIBBS LLP
601 California St., 14th Floor
San Francisco, CA  94108

Michael W. Davis
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603

/s/ Edward F. Siegel
EDWARD F. SIEGEL (0012912)

9