THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| IN RE: | * | |
| TYSON FOODS INC., CHICKEN | | Civil Action No.: RDB-08-1982 |
| RAISED WITHOUT ANTIBIOTICS | * | |
| CONSUMER LITIGATION | | |
|  | * | |

## MEMORANDUM OPINION

A class of Consumer Plaintiffs sued Defendant Tyson Foods, Inc. ("Tyson") alleging that Tyson's "Raised Without Antibiotics" ("RWA") promotional claims about its chicken products were misleading, and asserting claims under state consumer protection statutes and common law. The Parties have reached a settlement agreement. Now pending is Plaintiffs' Motion for Final Approval of Settlement (Paper No. 99), Class Counsel's Motion for Award of Attorney's Fees and Expenses (Paper No. 101), and Friends for Neighborhood Progress, Inc.'s Motion to be Included as a Cy Pres Recipient (Paper No. 118). A Fairness Hearing was held on May 7, 2010, at the conclusion of which this Court approved the settlement. Accordingly, for the following reasons, the above motions are GRANTED.

### BACKGROUND

On January 25, 2008, Sanderson Farms, Inc. and Perdue Farms, Inc. sued Tyson Foods, Inc. for violations of the Lanham Act in a case before this Court entitled *Sanderson Farms Inc. and Perdue Farms, Inc. v. Tyson Foods, Inc.*, Civil No. RDB-08-210. The Sanderson Farms plaintiffs alleged that Tyson's RWA promotional claims about its chicken products were false and misleading. On April 22, 2008, this Court granted the plaintiffs' motion for a preliminary injunction, holding that certain RWA claims were literally false and that others, which contained

1

qualifying language, were misleading. On June 2, 2008, Tyson agreed to remove all RWA claims from its labels.

After the Court's preliminary injunction order in *Sanderson Farms*, a number of consumer class actions were filed in various states alleging that Tyson's RWA claims were misleading, and asserting claims under state consumer protection statutes and common law. On October 17, 2008, the Judicial Panel on Multidistrict Litigation issued an order transferring all of the consumer cases to this Court for coordinated or consolidated pretrial proceedings. After extensive discovery and numerous rounds of settlement negotiations, Tyson notified this Court on January 12, 2010 that they had reached a proposed settlement. Paper No. 92.

On January 15, 2010, this Court held a hearing on preliminary settlement approval. The proposed settlement covers anyone who purchased Tyson chicken or chicken products sold in the United States labeled as either "Raised Without Antibiotics" and/or "Raised Without Antibiotics That Impact Antibiotic Resistance in Humans" between June 19, 2007 and April 30, 2009. Any member of this class may seek one of the following three types of claims:

Tier 1:
A consumer who simply affirms that she purchased any of the products at issue during the class period can obtain a coupon for $5 off any Tyson product.

Tier 2:
A consumer who purchased Tyson chicken products during the relevant time period may receive up to $10 cash with no requirement of documentary proof by identifying the products purchased and the place and date the purchases were made.

Tier 3:
A consumer who has retained receipts or obtains proof of purchase records from her grocer can receive up to $50 in cash.

Notably, Tyson will donate the difference between the total claims paid out (in addition to any administrative expenses) and the $5 million in Tyson product at wholesale cost to food banks around the United States. Class members may submit their claims by either filling out and

2

mailing in a hard-copy claim form or completing an electronic form online at www.ChickenSettlement.com.

The proposed settlement also releases any claims that a Plaintiff or class member (including spouses, assigns, heirs, executors, etc.) may have against Tyson; any distributors, food service providers, or retailers who sold or supplied its RWA chicken; or any parent company, affiliate, subsidiary, successor, employee, director, etc. of any of these entities. *See* Settlement Agreement ¶ 8.B, 8.C. This Court granted preliminary approval of the proposed settlement and directed dissemination of notice to the class. Paper No. 96. On May 7, 2010, at 10:00 a.m., this Court held the Fairness Hearing.

ANALYSIS

I.  Motion for Final Approval of Settlement

   A.  Standard of Review

The United States Court of Appeals for the Fourth Circuit has held that a class action settlement should be approved if it is both "fair" and "adequate." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). The "fairness" evaluation centers on the settlement process. A settlement is fair if it "was reached as a result of good faith bargaining at arm's length, without collusion." *Id*. at 159. In making this determination, a court should consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of … class action litigation." *Id.*

The "adequacy" evaluation is about substance of the settlement. *Id*. In assessing the adequacy of a settlement, a court should consider: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are

likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id*.

### B. Fairness and Adequacy of the Settlement Agreement

The extensive record in this case shows that the proposed settlement is fair. First, it was reached at a fairly advanced stage of the proceedings through non-collusive, arm's-length negotiations. Second, there has been extensive discovery, assuring sufficient development of the facts to permit an accurate assessment of the merits of the case. Third, the parties' negotiations were adversarial, as they took place while the parties were actively litigating the case. Fourth, Class Counsel is competent and experienced in consumer class litigation.

The record also shows that the proposed settlement is adequate. This Court's ruling in *Sanderson Farms* is a significant step toward establishing the merits of Plaintiffs' claim that Tyson's RWA labels were false and misleading. Plaintiffs, however, faced myriad procedural hurdles inherent to bringing a consumer class action case, such as proving damages on an aggregate basis and supplying expert analysis of the complex supermarket data that would be required to prove their case. Prosecuting this case to an outcome on the merits would undoubtedly have been a time-consuming and costly proposition. Finally, a significant number of class members – over 12,000 at this point in time – have filed claims online. Only two class members have opted out, and only five people filed timely objections. The objectors made generalized challenges to the notice plan, settlements that include coupons as part of the relief, the amount of attorneys' fees, the wording of the release, and the incentive payments to the named plaintiffs. At the May 7, 2010 fairness hearing, four attorneys[1] representing five objectors presented various objections to the proposed settlement. This Court found that none of

---
[1] One objector represented himself as an objector.

4

the objections had any merit. The proposed settlement terms are fair and adequate. Accordingly, Plaintiffs' Motion for Final Approval of Settlement is granted.

## II.     Motion for Award of Attorney's Fees, Expenses and Incentive Payments

### A.     Standard of Review

This Court has explained the calculation of a reasonable fee award, known as the lodestar award, as follows:

> A court's award of reasonable attorneys' fees is the product of the reasonable hours expended multiplied by a reasonable hourly rate. In assessing the reasonableness of the hours and rate claimed, the court considers the following twelve factors elucidated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 n.28 (4th Cir.1978): "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Xiao-Yue Gu v. Hughes STX Corp*., 127 F. Supp. 2d 751, 764 (D. Md. 2001) (quoting *EEOC v. Service News Co*., 898 F.2d 958, 965 (4th Cir. 1990) and citing, *inter alia, Hensley v. Eckerhart*, 461 U.S. 424 (1983)). The twelve-factor test is subsumed in the initial calculation of the lodestar award. *Hensley*, 461 U.S. at 434 n.9. "When . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal quotations omitted).

As part of a class action settlement, "named plaintiffs ... are eligible for reasonable incentive payments." *Stanton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if

it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998). To determine whether an incentive payment is warranted, a court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook,* 142 F.3d at 1016.

**B.      Reasonableness of Attorneys' Fees and Incentive Payments**

After having had strong initial reservations, and after having thoroughly reviewed the attorneys' fees and hearing the argument of counsel at the hearing, this Court finds that Class Counsel's application for an award of attorneys' fees and reimbursement of expenses totaling $3 million is reasonable. Notably, Tyson does not oppose this figure, and the attorneys' fees will be paid by Tyson separately from and without reducing the benefits to the class under the proposed class action settlement. The requested $3 million award represents attorneys' fees of $2,820,268 and reimbursement of expenses in the amount of $179,732. As of January 31, 2010, Class Counsel and associated counsel attest that they had spent at least 9,704 hours on this case, representing a lodestar of $4,356,748 when calculated using their current standard hourly rates, and a lodestar of $3,350,991 when calculated using rates prevailing in the Maryland market for services in consumer class litigation. *See* Paper No. 101 at ¶ 2. Thus, Class Counsel requests *less* than the lodestar amount. Class Counsel has provided sufficient proof that the amount of time spent on this case was "reasonably necessary for a thorough prosecution of the case, and included time spent on factual investigation, legal research and analysis, discovery, motion practice, and expert consultation in connection with class certification issues of choice of law, causation, reliance, class-wide proof of damages, and identification of class members." *Id*. ¶ 3.

Class Counsel's request for incentive awards in the amount of $2,500 for each of the four named Plaintiffs and four other class members who were deposed is also reasonable. This payment compensates the Plaintiffs and class members for their contribution to the process of the litigation. The incentive awards, which total $20,000, will be paid from the $5 million that Tyson is obligated to pay under the settlement toward class claims and administrative costs. Accordingly, Class Counsel's Motion for Attorneys' Fees and Expenses is granted.

### III.     Motion to be Included as a Cy Pres Recipient

Friends for Neighborhood Progress, Inc. ("Friends") files the pending Motion to be Included as a Cy Pres Recipient. Friends is a nonprofit 501(c)(3) organization that is located in Frederick Maryland. Friends operates a soup kitchen, the Frederick Home Center, and supports the Frederick Community Action Agency, which runs a food bank. At the May 7, 2010 Fairness Hearing the Parties explained their intention to donate to Friends the difference between the total claims paid out (in addition to any administrative expenses) and the $5 million settlement amount in Tyson products at wholesale cost. Accordingly, Friends' Motion to be Included as a Cy Pres Recipient is granted.

### IV.     Conclusion

For the reasons stated above, Plaintiffs' Motion for Final Approval of Settlement (Paper No. 99), Class Counsel's Motion for Award of Attorney's Fees and Expenses (Paper No. 101), and Friends for Neighborhood Progress, Inc.'s Motion to be Included as a Cy Pres Recipient (Paper No. 118) are GRANTED.

A separate Order follows.

Dated: May 11, 2010                         /s/_____

                                            Richard D. Bennett
                                            United States District Judge